ROBERT M. PETERSON [Bar No.: 100084]
MICHAEL C. COOPER [Bar No.: 114729]
CARLSON, CALLADINE & PETERSON LLP
353 Sacramento Street, 16th Floor
San Francisco, California 94111
Telephone: (415) 391-3911
Facsimile: (415) 391-3898

Attorneys for Defendant
EPSTEIN BECKER & GREEN, P.C.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>ATG CATALYTICS,<br><br>    Debtor.<br><br>———————————————<br><br>ROBERT I. HANFLING, CHAPTER 11 TRUSTEE,<br><br>    Plaintiff,<br><br>    vs.<br><br>EPSTEIN BECKER & GREEN, P.C., et al.,<br><br>    Defendants. | Case No.: C-04-1450 PJH<br>BK Adv. Case No. 03-4806<br><br><br><br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>Date: September 29, 2004<br>Time: 9:00 a.m.<br><br>Judge: Honorable Phyllis J. Hamilton |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................................... 2

III. DISCUSSION ............................................................................................................. 4

    A. The Standard For Transfer of Venue ................................................................. 4

    B. This Proceeding Could Have Been Brought In The United States District Court For The District Of Massachusetts ........................................................................ 6

    C. Massachusetts Is A More Convenient Forum .................................................... 7

        1. A Massachusetts Venue Is More Convenient for the Parties ....................... 7

        2. Convenience of Witnesses Weighs Heavily in Favor of a Massachusetts Venue ........... 8

        3. The Interests of Justice Will Be Better Served If This Matter is Transferred to Massachusetts ........................................................................ 9

IV. CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Bourdon*, 682 F Supp 95 (1988, D.C.N.H.) ............................................................... 9

*Chrysler Capital Corp. v. Woehling*, 663 F.Supp. 478 (D. Del. 1987) ........................................ 6

*Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F Supp 247 (1974, S.D.N.Y.) .......... 8, 10

*Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960) .. 5

*Firestone v. Galbreath*, 722 F. Supp. 1020 (1989, S.D.N.Y.) ..................................................... 9

*Hernandez v. Graebel Van Lines*, 761 F.Supp. 983 (E.D.N.Y. 1991) ........................................ 6

*McAlister v. General American Life Ins. Co.*, 516 F. Supp. 919 (1980, W.D. Okla.) ............... 8, 10

*Miskow v. The Boeing Co.,* 664 F.2d 205 (9th Cir. 1981) .................................................... 5

*Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955) ................................. 5

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981) ................ 5

*Pope v. Missouri P. R. Co.*, 446 F Supp 447 (1978, W.D. Okla.) ............................................. 10

*Van Dusen v. Barrack,* 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) .......................... 5

**Statutes**

28 U.S.C. §1391 ........................................................................................................................ 6

28 U.S.C. §1391(a) ................................................................................................................... 6

28 U.S.C. §1391(a)(1) ............................................................................................................... 6

28 U.S.C. §1391(a)(2) ........................................................................................................... 6, 7

28 U.S.C. §1391(c) .................................................................................................................... 6

28 USC §1404 ............................................................................................................. 1, 4, 8, 10

28 U.S.C. §1404(a) ......................................................................................................... 4, 7, 9, 10

## I. INTRODUCTION

Defendant Epstein, Becker, & Green, P.C. ("EBG") brings this motion, pursuant to Title 28 USC §1404, to transfer venue from this District to the District Court of Massachusetts (Boston) for the convenience of the parties, for the convenience of the witnesses, and in the interests of justice. As discussed more fully below, all three factors for transferring venue are satisfied here. First, it is more convenient for the parties to litigate this action in Massachusetts. All of the work by EBG, allegedly giving rise to the allegations against EBG in this malpractice action, was performed in its Boston, Massachusetts office. Similarly, Boston, Massachusetts would be a more favorable venue for the Trustee, Robert Hanfling, whose residence is in Washington, D.C.

Second, a Massachusetts venue is more convenient for the anticipated witnesses in this action. Nearly all of the negotiations giving rise to the transaction at issue in this action occurred in Boston, and nearly all of the witnesses to the transaction, including a bankruptcy trustee, who negotiated the transaction on behalf of the seller/debtor, reside in Massachusetts where that bankruptcy proceeding was pending. The EBG lawyers, who were involved in the work allegedly giving rise to the claim against EBG, all work out of its Boston office. Most of the other individuals, identified in the complaint, as well as their lawyers in the underlying transaction, are all from Massachusetts as well.

Third, the interests of justice and efficiency of judicial administration also favor a Massachusetts venue. A Massachusetts venue will prevent unnecessary litigation expenses by all parties and central witnesses, the bulk of whom reside in Massachusetts and may not be subject to personal jurisdiction in California; all of the relevant documents, except perhaps those of ATG, are located in the Boston area; and finally, all of the voluminous bankruptcy court records relating to the underlying bankruptcy transaction are located in Boston as well.

For all of these reasons, EBG respectfully requests that this Court transfer this matter to the District Court for the District of Massachusetts (Boston) for the convenience of the parties, for the convenience of the witnesses, and in the interests of justice.

1

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**
**CASE NO.: 03-4806**

## II. **FACTUAL BACKGROUND**

The single malpractice claim against EBG in this action arises from a transaction wherein certain assets of a company called Molten Metal Technology, Inc. ("MMT") were sold, through MMT's trustee in bankruptcy, to ATG affiliated companies, ATG Nuclear Services LLC ("ATG Nuclear") and ATG Catalytics LLC ("ATG Catalytics"), as well as to a non-affiliated entity, Quantum Catalytics LLC ("Quantum Catalytics") (this sale transaction is hereinafter referred to as the "Acquisition"). (Declaration of Jarvis P. Kellogg, ¶1.) Both ATG Catalytics and Quantum Catalytics purchased certain assets of MMT referred to loosely in the Complaint as the CEP assets. ATG, Inc. ("ATG") was a guarantor under the terms of the Acquisition. (Kellogg Declaration, ¶4.)

The Complaint alleges that certain individuals identified in the Complaint, John Preston, Christopher Nagel, Eugene Berman and Ethan Jacks, were all at one time former officers and/or directors of MMT and/or its affiliated companies, which had their principal place of business in Massachusetts. (Complaint at ¶¶9-12; Reqeust for Judicial Notice at ¶4, Ex. A.) The Complaint further alleges that the individuals, Dr. Nagel and Messrs. Preston, Berman and Jacks, made certain misrepresentations regarding the CEP assets that were purchased by ATG Catalytic, and therefore, ATG Catalytic, and its guarantor, ATG, were damaged as a result of the purchase of those assets. (Complaint at ¶¶43, 52-58, and 60-64; Request for Judicial Notice at ¶5, Ex. A.). The Complaint then asserts that EBG should have known that the representations made by the individuals were inaccurate because of EBG's representation of certain of those individuals on other matters. (Complaint at ¶¶44-50.)

At the time of the Acquisition, MMT was in bankruptcy in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division). (Complaint at ¶20; Request for Judicial Notice, ¶2, Ex A.) Stephen S. Gray was the duly appointed Chapter 11 trustee for the debtor, MMT, as well as other affiliated debtors. (Complaint at ¶20; Request for Judicial Notice, ¶2, Ex. A). Both purchasing entities at issue in the Complaint, Quantum Catalytics and ATG Catalytics, were formed for the purpose of purchasing the CEP assets by Boston law firms. Quantum

Catalytics was formed by the Boston law firm of Mintz, Levin, Cohn, Farris, Glovsky & Popko, P.C., and ATG Catalytics was formed by lawyers in EBG's Boston office. (Kellogg Declaration, ¶4.)

The Acquisition documentation was negotiated, drafted and executed in Boston. (Kellogg Declaration, ¶5.) As stated above, the MMT bankruptcy was venued in Massachusetts. Trustee Gray, and his company, The Recovery Group, were, and are, in the Boston area. (Kellogg Declaration, ¶5.) Negotiations between ATG/ATG Catalytic and Trustee Gray, as to the terms and conditions of the Acquisition, all occurred in Boston or in the immediate Boston area; ATG's representatives traveled to Boston for the negotiations. (Kellogg Declaration, ¶5.) Moreover, all of the counsel for all of the parties were Boston counsel: (1) EBG represented ATG and ATG Catalytic; (2) Mintz, Levin represented Dr. Nagel, Mr. Preston and Quantum Catalytics, and (3) Riemer & Braunstein LLP, also a Boston law firm, represented Trustee Gray. (Kellogg Declaration, ¶5.) Moreover, most, if not all, of the meetings between the parties occurred in Boston, either at the offices of EBG or the offices of Mintz, Levin. (Kellogg Declaration, ¶5.)

The closing of the Acquisition occurred in Boston as well. In November 1998, ATG and Quantum Catalytics made a joint bid to purchase the aforementioned assets of MMT. (Kellogg Declaration, ¶6.) All of the negotiations between Quantum Catalytics and ATG to form this joint bid occurred in Boston. (Kellogg Declaration, ¶6.)] The order approving the sale of MMT's assets was, likewise, entered in Boston in November 1998 by the United States Bankruptcy Judge for the District of Massachusetts (Eastern Division). (Request for Judicial Notice, ¶3, Ex. B.) The subsequent December 1, 1998 letter agreement memorializing the parties' agreement, pursuant to the bid and the order of sale, was executed in Boston as well. (Kellogg Declaration, ¶6.) All of the EBG documents pertaining to the Acquisition, and presumably all of the documents of Mintz, Levin, Riemer & Braunstein and the trustee are stored in the Boston area. (Kellogg Declaration, ¶6.)

Similarly, the allegations in the Complaint as to EBG's representation of certain of the individuals identified in the Complaint have a Boston nexus as well. EBG's representation of Dr. Nagel, and its later representation of Mr. Preston, was performed in the Boston office. (Tuteur

3

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**
**CASE NO.: 03-4806**

1 Declaration, ¶¶2-4.) All subsequent representation of Dr. Nagel and Mr. Preston took place in Boston as well. (Tuteur Declaration, ¶4.) Finally, all of EBG's records relating to its representation of Dr. Nagel and Preston are stored in the Boston area. (Tuteur Declaration, ¶4.)

## III. DISCUSSION

### A. The Standard For Transfer of Venue

Title 28 U.S.C., §1404(a) provides that, for the convenience of the parties, witnesses, and in the interests of justice, the court may, at its discretion, transfer an action to another venue in which it could originally have been brought. While the analysis conducted under §1404[1] is

---

[1] Although there appears to be some disagreement among the federal courts as to whether the general venue statute, §1404, or the bankruptcy venue statute, 28 U.S.C. §1412, applies to adversary proceedings, the more "convincing" reasoning from the various decisions concludes that §1412 does not apply because it only applies to cases arising "under" Title 11, and not cases "related to" Title 11. See, *e.g., Ni Fuel Co., Inc. v. Jackson,* 257 B.R. 600, 622-623 (N.D. Okla. 2000):

> At least four lower federal courts have held that a "related to" proceeding is not one that is "under" Title 11 and, thus, that section 1412 would not control a transfer issue in such cases. [Citations omitted.] These courts instead opted to proceed under 28 U.S.C. §1404(a), the general venue statute to the issue of transfer.
>
> The reasoning of these decisions is convincing. Specifically, the above courts pointed out that the predecessor to §1412, 28 U.S.C. §1475, stated: "A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties."
>
> The phrase "related to such a case" is deleted from the current rendition of §1412 which, according to these cases, evidences an intent by Congress to follow the pronouncements of the United States Supreme Court in the *Marathon* case to limit the authority of an Article 1 bankruptcy court…. Hence, this court holds that the plain meaning of the omission in §1412 supports the conclusion that §1412 no longer applies to "related to" proceedings. Id.
>
> Moreover, "[b]ecause of the ambiguous phrase 'any civil action,' it has been held that this section [28 U.S.C. §1404(a)] applies not only to the general federal venue provisions, *e.g*., 28 U.S.C. §1391, but also to special venue statutes within Title 28 and elsewhere in the Federal Code." *In re Fireman's Fund Insurance Company*, 588 F.2d 93, 95 (5th Cir. 1997).

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

essentially the same as that conducted in a *forum non conveniens* analysis, §1404(a) vests federal courts with the power to exercise broader discretion to grant transfers upon a lesser showing of inconvenience than is required under the *forum non conveniens* analysis. See, *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955); see also, *Miskow v. The Boeing Co.,* 664 F.2d 205, 207 (9th Cir. 1981) ("[t]he doctrine of forum non conveniens in the federal courts was partially displaced with the passage of 28 U.S.C. section 1404…"). Section 1404 was enacted to allow easy transfer of actions to a more convenient federal forum because Congress recognized that the broad venue provisions in Federal Acts often resulted in inconvenient forums. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981) (section 1404(a) enacted to allow "easy change of venue"); *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (section 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice"). Section 1404, therefore, has a broad remedial purpose: "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, *supra,* 376 U.S. at 616, quoting *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960).

Moreover, although plaintiff's venue choice is an important consideration in determining whether a motion to transfer should be granted, the degree to which courts defer to plaintiff's chosen venue is substantially reduced where plaintiff's venue choice lacks a significant connection to the activities alleged in the complaint. See, *e.g., Chrysler Capital Corp. v. Woehling*, 663 F.Supp. 478, 482 (D. Del. 1987) ("…when the plaintiff chooses a forum which has no connection to himself or the subject matter of the suit, and is thus not his 'home turf,' the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer."); *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 991 (E.D.N.Y. 1991) (under circumstances where an accident occurred in a different venue and most of the witnesses were within the proposed transferee district, the plaintiff's choice of forum is not entitled to the same weight than might normally attach).

5

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**
**CASE NO.: 03-4806**

### B. This Proceeding Could Have Been Brought In The United States District Court For The District Of Massachusetts

Title 28 U.S.C. §1391 provides that a civil action, where jurisdiction is founded on diversity of citizenship, may be brought in (1) a judicial district where any defendant resides, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action commenced if there is no district in which the action may otherwise be brought[2]. Here, this proceeding satisfies both prongs (1) and (2).

The claims asserted against EBG could have been brought in the federal district court for the District of Massachusetts (Boston) on two independent grounds under Title 28 U.S.C. §1391(a). First, EBG has an office in Boston, Massachusetts, and has had that office in Boston throughout the dates alleged in the Complaint in this action to present. (Kellogg Declaration, ¶2). EBG is a professional corporation. (Kellogg Declaration, ¶2). As a professional corporation, EBG resides in any judicial district in which it has offices. Title 28 U.S.C. §1391(c). EBG was also subject to personal jurisdiction in Boston where its offices have been located prior to and at the time this proceeding was commenced. Title 28 U.S.C. §1391(a)(1).

Venue is also proper in the District of Massachusetts because it is the judicial district in which a substantial part of the events or alleged omissions giving rise to this claim occurred, as more fully set forth above. 28 U.S.C. §1391(a)(2). As set forth more fully above, the Complaint in this matter alleges that the damages plaintiff seeks to recover arises from the Acquisition. (Complaint at ¶5, p.2; Request for Judicial Notice at ¶7, Ex. A.) All of the negotiations for and the consummation of this Acquisition occurred in Boston, Massachusetts, including the approval of the transaction by the United States District Court for the District of Massachusetts. EBG's

---

[2] Title 11 USC § 1409 also provides, *inter alia*, that a trustee in a case under title 11 USCS §§ 101 *et seq.*, may commence a proceeding arising in or related to such case as statutory successor to the debtor or creditors under section 541 or 544(b) of title 11 in the district court for the district where the State or Federal court sits in which, under applicable non-bankruptcy venue provisions, the debtor or creditors, as the case may be, may have commenced an action on which such proceeding is based if the case under title 11 USCS §§ 101 *et seq.* had not been commenced.

representation of certain individuals, who are alleged in the Complaint to have made misrepresentations in connection with the Acquisition, occurred in Boston as well. Thus, venue is proper in the District of Massachusetts because it is the district in which the substantial part of the events and/or omissions alleged in the Complaint occurred. Title 28 U.S.C. §1391(a)(2).

The threshold requisite for transferring venue is, therefore, satisfied here because the claim against EBG could have been brought in the District Court of Massachusetts.

### C. Massachusetts Is A More Convenient Forum

All three of the factors set forth in §1404(a) for determining the more convenient forum for purposes of transferring venue are satisfied here: (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice.

#### 1. A Massachusetts Venue Is More Convenient for the Parties

EBG's representation of ATG in connection with the Acquisition occurred in EBG's Boston office and its Boston lawyers were responsible for virtually all the matters relating to that Acquisition. (Kellogg Declaration ¶¶4-6) EBG's representation of Mr. Preston and Dr. Nagel, as alleged in paragraph 43 of the Complaint, also occurred in EBG's Boston office. (Tuteur Declaration at ¶¶2-4). Transferring venue to Boston, Massachusetts would clearly be more convenient for EBG, in that all of its witnesses and documents are located in Boston. (Declaration of Tuteur at ¶5; Declaration of Kellogg at ¶5.)

Similarly, Boston, Massachusetts would be a more favorable venue for the Trustee, Robert Hanfling, whose residence is in Washington, D.C. (Request for Judicial Notice at ¶8, Ex. C.) Given that a Massachusetts venue would be more favorable for both plaintiff and defendant, the first factor under a §1404(a)'s convenience analysis weighs heavily in favor of a transfer to the District Court of Massachusetts. A Massachusetts venue would also be more convenient for the Trustee's counsel, who reside in Connecticut.

7

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**
**CASE NO.: 03-4806**

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

2. <u>Convenience of Witnesses Weighs Heavily in Favor of a Massachusetts Venue</u>

Nearly all of the witnesses who will provide relevant testimony in the matter are located in the Boston, Massachusetts area. First, this entire matter arises from the MMT bankruptcy, which was commenced and conducted in its entirety in the United States Bankruptcy Court in Boston. The bankruptcy trustee, Stephen Gray, of the Recovery Group, who negotiated the terms and conditions of the Acquisition on behalf of MMT, was, and is, headquartered in the Boston area. (Kellogg Declaration, ¶5.) Similarly, the law firm representing Trustee Gray, Riemer & Braunstein, has offices in Boston. (Kellogg Declaration, ¶5.) EBG anticipates that Trustee Gray and his attorneys will testify as to what was or was not discussed during negotiations in connection with the Acquisition. (The place in which significant contacts occurred should be considered as an additional factor in determining an appropriate forum, on a motion for transfer under §1404. *McAlister v. General American Life Ins. Co.*, 516 F. Supp. 919, 922 (1980, W.D. Okla.) ("…the place in which significant contacts between the parties occurred should be considered as the appropriate forum for trial."); *Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F Supp 247 (1974, S.D.N.Y.).)

Other witnesses, as disclosed in the Complaint, are Dr. Nagel and Messrs**.** Preston, Berman and Jacks, who are alleged to have knowledge as to the feasibility of the CEP technology, and further are alleged to have made certain representations to ATG representatives in connection with the Acquisition, allegedly to the detriment of ATG Catalytic and ATG. (Complaint at ¶¶48, 52-57 and 60-63**.)** Dr. Nagel and Mr. Preston, whose testimony is central to the claims alleged against EBG, reside in Massachusetts. (Tuteur Declaration at ¶5.) (On information and belief, Mr. Jacks resides in Massachusetts, as well, and Mr. Berman resides in Maryland.[3]) The attorneys representing these individuals in the Acquisition, moreover, are all from the Boston area. For example, during the course of the Acquisition, Mr. Preston and Dr. Nagel (and the entity Quantum Catalytics) were represented by the Boston law firm of Mintz, Levin. (Kellogg Declaration at ¶5.)

---

[3] EBG does not presently anticipate calling Messrs. Jacks and Berman as witnesses, but they are alleged in the Complaint to have knowledge relating to the Acquisition.

8

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**
**CASE NO.: 03-4806**

EBG anticipates that the attorneys at Mintz, Levin will testify as to the negotiations surrounding the Acquisition and the representations made in connection therewith.

The Complaint also references another witness who appears to be from the Boston area, Garnett McConchie, who allegedly has information regarding purported flaws in the CEP technology. (Complaint at ¶¶26-27; Request for Judicial Notice at ¶9, Ex. A.) Mr. McConchie, presumably a key witness for the Trustee, was represented by Dwyer & Collora LLP, a Boston law firm. (Tuteur Declaration at ¶5.)

In short, nearly all of the pertinent witnesses disclosed in the Complaint are in the Boston, Massachusetts area, and all of the lawyers representing those witnesses and other witnesses at the pertinent times alleged in the Complaint are in the Boston, Massachusetts area as well. It is certainly more convenient for these witnesses to testify in Boston, where they reside and where, presumably, all their relevant documents are located. Thus, the second prong of the convenience analysis under §1404(a) weighs heavily in favor of transferring venue to Massachusetts. See, *Buckley v. Bourdon*, 682 F Supp 95 (1988, D.C.N.H.) (negligence action against law firm severed and transferred from New Hampshire to Vermont under §1404(a), because the pertinent documents, witnesses and defendants were in Vermont and plaintiffs lived near New Hampshire-Vermont border.); *Firestone v. Galbreath*, 722 F. Supp. 1020 (1989, S.D.N.Y.) (case involving challenge to transfers of property in settlement of estate transferred from New York to Ohio, where most defendants and many important witnesses reside, and where virtually all important records are stored, because convenience of parties and witnesses, and interests of justice, clearly warranted transfer.)

### 3. The Interests of Justice Will Be Better Served If This Matter is Transferred to Massachusetts

The interests of justice and efficiency of judicial administration favor a Massachusetts venue for several reasons. First, a Massachusetts venue will prevent the unnecessary incursion of litigation expenses by all parties and central witnesses. Defendant and all the pertinent witnesses, including Bankruptcy Trustee Gray of the MMT bankruptcy, are all located in the Boston area. It would certainly be far more expensive for these parties and witnesses if this matter were to be

9

litigated in California. Second, all of the relevant documents, except perhaps those of ATG, are located in the Boston area. All of the documents of EBG relating to the Acquisition and representation of Dr. Nagel and Mr. Preston are stored in the Boston area. Presumably, all of the records of the Boston attorneys representing the various witnesses, as well as the witnesses' own records, are in Massachusetts. Finally, all of the voluminous bankruptcy court records relating to the MMT bankruptcy are located in Boston as well.

Moreover, the live trial testimony of these Boston witnesses could be a critical aspect of this case if credibility becomes an issue as to whether certain representations were made by the individual witnesses, and these witnesses are most likely not subject to personal jurisdiction in California. This access to proof in Boston also weighs in favor of a Boston venue. *Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, *supra,* 371 F Supp at 250 ("The possibility that a case may be tried where certain crucial witnesses could not be compelled to attend is an important consideration. Requiring a party to try his case with depositions because the place of trial is such as to prevent the party from compelling attendance of material witnesses is unacceptable when the case could be transferred to a district where attendance could be compelled and which would be convenient in other respects for both parties."); *Pope v. Missouri P. R. Co.*, 446 F Supp 447 (1978, W.D. Okla.) (interest of justice favored transfer under §1404 where, in transferee district, there would be greater access to sources of proof, greater availability of compulsory process for unwilling witnesses, less expense in obtaining attendance of willing witnesses, and where accident giving rise to action took place in transferee district); and *McAlister v. General American Life Ins. Co.*, *supra,* 516 F. Supp. at 922 (under interest of justice standard, there should be considered the relative ease of access to sources of proof, availability of compulsory process for attendance for unwilling witnesses, cost of obtaining attendance of unwilling witnesses, and all other practical problems that make trial of case easy, expeditious and inexpensive).

For all these reasons, the third prong of the convenient forum analysis under §1404(a) weighs heavily in favor of a Massachusetts venue because the interests of justice and efficiency of judicial administration favor that forum.

10

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**
**CASE NO.: 03-4806**

## IV. CONCLUSION

For all of the reasons set forth above, EBG respectfully requests that this Court transfer this matter to the District Court for the District of Massachusetts (Boston) for the convenience of the parties, for the convenience of the witnesses, and in the interests of justice.

DATED: August 20, 2004                    CARLSON, CALLADINE & PETERSON LLP


By_____
    MICHAEL C. COOPER
    Attorneys for Defendant
    EPSTEIN BECKER & GREEN, P.C.